IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MARCUS KENDALL McGHEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| MARCUS CAMBY, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**
-and-
<u>**JURY DEMAND**</u>

1. Plaintiff brings this wrongful death lawsuit over the needless death of his 9-year-old son, Marcus Carter McGhee. Marcus was a sweet, loving boy. Marcus was also severely autistic, with reduced cognitive abilities. As a result, Marcus required continuous adult supervision. Further, Marcus was almost entirely non-verbal, so that even when he could appreciate that he was in danger, he could not call out for help. During the 2016 Thanksgiving holiday, Marcus traveled from his home in Connecticut to visit family in Texas. This included visiting Marcus Camby, the defendant in this case. Camby owns a large home on several acres in Pearland, which includes a man-made, unfenced pond. Despite being aware of his nephew's significant limitations, Camby failed to supervise Marcus while he was at his house. Camby also put no protective measures in place to keep Marcus from the pond. While under Camby's care and protection, Marcus strayed from the house and drowned in the pond. Had Camby exercised the most basic of precautions, this tragic death could have been avoided.

**A. Parties**

2. Plaintiff Marcus Kendall McGhee is an individual and is the father of the decedent, Marcus Carter McGhee. Plaintiff is a citizen of the State of Connecticut.

3. Defendant Marcus Camby is an individual and a citizen of the State of Texas. He may be served with process at his home located at 6725 Fite Road, Pearland, Texas 77584.

**B. Jurisdiction**

4. The Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because

Plaintiff and Defendant are citizens of different U.S. States, and the amount in controversy exceeds $75,000, excluding interest and costs.

### C. Venue

5. Venue is proper in this district under 28 U.S.C. § 1391 (b)(1) because Defendant resides in this district. Further, venue is also proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district, as set forth in the factual section below.

### D. Factual Background

6. Marcus Carter McGhee ("Marcus") was born in 2007 to Mia Camby ("Mia") and Marcus Kendall McGhee ("Plaintiff"). The family lived in the Hartford, Connecticut area. Mia and Plaintiff never married, but remained a couple for several years after Marcus' birth. Eventually, Mia and the Plaintiff decided to end their relationship, with each parent taking joint responsibility for raising and caring for their son.

7. Doctors diagnosed Marcus with autism when he was very young. His impairment was severe. Other than a few basic words, he could not speak. Though he was nine years old at the time of his death, he only had the cognitive abilities of a young toddler. Because of this, he attended a special school for autistic children.

8. Marcus could not appreciate danger like other children his age. Further, he had "elopement" issues, meaning that he had a tendency to wander away from the area that he was supposed to be in. Elopement is a frequent problem with children on the autism spectrum, and in Marcus it was particularly pronounced. Both of these conditions—Marcus's inability to appreciate danger and his tendency to elope—made it paramount that Marcus be monitored by an adult at all times.

9. Plaintiff loved his son dearly and strove to be a good father to him. Though Mia had primary custody, Marcus spent a great deal of time with his father and frequently stayed at Plaintiff's home and with Plaintiff's family.

10. In 2016, Mia decided to visit her brother, Defendant Marcus Camby, for Thanksgiving. Camby, a former professional basketball player, lives on a large compound in Brazoria County, Texas. The property contains a main house, a secondary house, a pool, and a large man-made pond. There is no fencing or other barrier separating the homes on the property from the bodies of water.

11. Camby was aware of Marcus' cognitive deficiencies, and he knew the risk that Marcus could wander from the main home and possibly drown in one of the bodies of water located on the property if he was not closely monitored.

12. While Mia was in Texas with their son, Plaintiff spent Thanksgiving with his family on Long Island in New York. Late in the afternoon on Thanksgiving Day, Mia called Plaintiff from Texas, explaining to him that they could not find Marcus, but that Camby and some other adults were out looking for him.

13. Plaintiff instructed Mia to call the police and immediately began making his way to Texas. He arrived the next day (Friday) around noon. By this point, numerous law enforcement agencies and volunteers had joined the search for Marcus.

14. Tragically, rescue workers discovered Marcus's lifeless body in Camby's unfenced pond on Saturday morning. He had drowned in the pond after wandering from the main home while not being supervised by Camby.

### E. Wrongful Death

15. Plaintiff brings this lawsuit under Texas Civil Practices and Remedies Code, Chapter 71. Plaintiff is a statutory beneficiary of his son, Marcus. Camby's wrongful conduct caused Marcus' bodily injury, and Marcus would have been entitled to bring a cause of action for damages had he lived.

### F. Causes of Action

16. The following claims are asserted jointly and in the alternative. All factual allegations set forth above are incorporated into each cause of action as if fully set forth below.

*Count 1: Premises Liability Claim by an Invitee*

17. Camby was the owner of the premises located at 6725 Fite Road. Marcus entered Camby's property at his invitation and for their mutual benefit.

18. Conditions on Camby's property posed an unreasonable risk of harm. These risks included, but are not limited to, the following: (1) there was no physical barrier between the house and the pond; (2) there was no alarm to alert others that a child had wandered outside and/or had entered the pond; (3) the design of the pond made it unreasonably dangerous and more likely that a child wandering into the pond would not be able to escape; (4) the pond was not properly maintained; and (5) the pond did not comply with local and state requirements concerning bodies of water.

19. Camby knew or should have known of the foregoing risks.

20. Camby had a duty to use ordinary care to ensure that his premises did not present a danger to Marcus. This duty included a duty to inspect the safety of the pond, as well as the duty to warn or to cure.

21. Camby's breach resulted in Marcus's death. As such, Plaintiff has suffered, and will continue to suffer the mental anguish, pain and suffering, and loss of consortium that comes from losing a child.

22. Plaintiff further invokes the attractive nuisance doctrine in support of Marcus's status as an invitee. The effect of the attractive nuisance doctrine is to abolish, as to young children, the distinction between invitees, licenses, and trespassers. Plaintiff is entitled to recover under the attractive nuisance doctrine because Camby knew there was an artificial condition on his property (the pond) and that condition posed an unreasonable risk of death or serious bodily injury to children. Because of his youth and reduced cognitive ability, Marcus did not recognize the danger posed by the pond. Further, Camby did not exercise reasonable care to eliminate the danger or otherwise protect Marcus.

*Count 2: Premises Liability Claim by Licensee*

23. Camby was the owner of the premises in question. Marcus entered Camby's property with Camby's consent and as the child of a social guest.

24. Conditions on Camby's property posed an unreasonable risk of harm. These risks included, but are not limited to, the following: (1) there was no physical barrier between the house and the pond; (2) there was no alarm to alert others that a child had wandered outside and/or had entered the pond; (3) the design of the pond made it unreasonably dangerous and more likely that a child wandering into the pond would not be able to escape; (4) the pond was not properly maintained; and (5) the pond did not comply with local and state requirements concerning bodies of water.

25. Camby had actual knowledge of the dangers on his property.

26. Marcus was unaware of these dangerous conditions. Although Marcus was nine years of age at the time of his death, Marcus did not possess the normal mentality of a typical nine-year-old. Because of his autism, Marcus possessed the mentality of a much younger child, and he was unable to appreciate the danger involved in leaving Camby's house and going near his pond. Further, Marcus had "elopement" issues, meaning that he had a tendency to wander away from

the area that he was supposed to be in. Camby was well aware of Marcus's limitations, and he did not take adequate steps to protect him.

27. Camby breached the duty of ordinary care by not adequately warning Marcus of the dangers associated with the pond, and/or by failing to make the conditions reasonably safe. Further, Camby owed Marcus a duty not to injure him willfully, wantonly, or through gross negligence, and Camby breached these duties.

28. Camby's breach resulted in Marcus's death. As such, Plaintiff has suffered, and will continue to suffer the mental anguish, pain and suffering, and loss of consortium that comes from losing a child.

*Count 3: Negligent Activity*

29. Marcus' injury was the result of Camby's negligence. Camby owed a legal duty to Marcus, including a duty to act with reasonable care in protecting Marcus from harm. Camby breached this legal duty by, among other things, (1) failing to inspect the pond; (2) failing to properly supervise a minor and intellectually impaired guest; (3) failing to implement and/or enforce appropriate guidelines to ensure that minors did not enter the pond while unsupervised; (4) delaying in the search for Marcus; and (5) failing to contact the authorities in a timely manner to search for Marcus. Camby's breach proximately caused bodily injury and death to Marcus. Because of this, Plaintiff has suffered, and will continue to suffer damages, including mental anguish, pain and suffering, and loss of consortium.

## G. Parental Immunity

30. Plaintiff's claims are not subject to defense or reduction as a result of any alleged neglect or fault on the part of Plaintiff or Mia, because the doctrine of parental immunity prevents such claims in this case.

## H. Conditions Precedent

31. All conditions precedent necessary for the filing of this suit have been performed or have occurred.

## I. Damages

32. Plaintiff seeks recovery of the following damages:
   a. Actual and general damages;
   b. Past and future pain, suffering, and mental anguish;
   c. Past and future loss of consortium, companionship, and society;

d. Past and future loss of services;

   e. Court costs;

   f. Pre-judgment and post-judgment interest; and

   g. All other damages to which Plaintiff may show himself entitled.

## J. Jury Demand

33. Plaintiff demands a trial by jury and has submitted the appropriate fee.

## Prayer

Accordingly, Plaintiff requests that on final trial, he be awarded the damages requested above, and all further relief to which Plaintiff may be entitled.

>Respectfully Submitted,
>
>FERNELIUS SIMON PLLC
>
>/s/ C. Brannon Robertson
>C. Brannon Robertson (Attorney in charge)
>State Bar No. 24002852
>S.D. Tex. No. 22131
>Brannon.robertson@trialattorneytx.com
>Stephen M. Fernelius
>State Bar No. 06934340
>S.D. Tex. No. 14121
>Steve.Fernelius@trialattorneytx.com
>Ryan M. Perdue
>State Bar No. 24046611
>S.D. Tex. No. 580962
>Ryan.Perdue@trialattorneytx.com
>1221 McKinney, Suite 3200
>Houston, Texas 77010-3095
>Telephone: 713-654-1200
>Fax: 713-654-4039
>
>ATTORNEYS FOR PLAINTIFF